## Philip C. Dyrenforth et al., Appellees, v. The Palmer Pneumatic Tire Company, Appellant.

### Gen. No. 14,198.

1. CONTRACTS—*what sufficient consideration to support novation.* The making of a concession and the incurring of a new obligation is a sufficient consideration to support a novation.

2. SALES—*when transaction within legal definition of.* A transfer by one company of its business and assets to another, the same to be paid for in quarterly instalments, is a legal sale even though a provision is made that in the event of the happening of a particular contingency the obligation to make further payments becomes extinguished.

3. ATTORNEY AND CLIENT—*what not threat to disclose confidential communications. Held,* that the letter in evidence in this case was not a threat to disclose confidential communications.

4. STATUTE OF FRAUDS—*what takes case out of.* Part performance of a contract not to be performed within a year, takes the same without the Statute of Frauds.

Bill in chancery. Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed December 4, 1908.

**Statement by the Court.** Appellees, complainants in the Circuit Court, are patent lawyers in Chicago. The Palmer Pneumatic Tire Company, the appellant, was organized in 1892, and from the time of its organization appellees were its patent lawyers. It was the owner of a number of patents relating to pneumatic tires which had been issued to John F. Palmer, and by him assigned to said company, and of some

unimportant patents assigned to it by other persons. The business of the company was the sale of pneumatic tires which were manufactured for it, under said patents, by the B. F. Goodrich Company.

September 26, 1898, said Palmer company transferred all of its property, patents, business, good-will, etc., to the Goodrich company, in consideration of an agreement by that company to pay to it $394,750, payable in quarterly installments of $8,750 each, on the first days of October, January, April and July in each year for the next eleven years, beginning October 1, 1898, and ending October 1, 1909, and a further sum of $1,000 January 1, 1910.

The relief demanded by complainants in their bill was based on their allegations that the Palmer company, in October, 1898, made with them an arrangement to pay to them, as their compensation for their services in negotiating such agreement with the Goodrich company, ten per cent. of the amounts paid by the Goodrich company, one-half, five per cent., payable as said installments were received by the Palmer company from the Goodrich company, and the remaining one-half, five per cent., on the whole amount so received by appellant from the Goodrich company when the final payment was made by the Goodrich company. The Goodrich company paid to the Palmer company each installment as it fell due. The Palmer company paid to complainants five per cent. of each installment so received by it, down to and including the installment due July 1, 1905. On its refusal to make any further payments, the bill in this case was filed by complainants against the Palmer company, the Goodrich company, John F. Palmer, and John S. Driver, defendants, to compel the Palmer company to make the payments it had agreed to make to complainants. The Palmer company answered the bill and filed a cross-bill against complainants, which was answered by them. After replications the cause was referred to a master to take and report the proofs

with his conclusions. To the master's draft report the Palmer company filed ninety-seven objections, which were all overruled by the master. The objections were ordered to stand as exceptions to the report. The decree overruled said exceptions and decreed, in accordance with the findings and recommendations of the master, that the Palmer company pay to complainants $2,739.05, being five per cent. on the six installments paid to the Palmer company by the Goodrich company from and including October 1, 1905, to and including January 1, 1907, with interest to May 20, 1907, the date of the report, and that it pay five per cent. of each installment paid by the Goodrich company after January, 1907, from time to time as such payments are made, and that, on the final payment being made by the Goodrich company to the Palmer company, that company pay to complainants five per cent. of the total payments which shall have been made by the Goodrich company to the Palmer company under said contract. The decree dismissed the bill as to the defendants Palmer and Driver, and dismissed the cross-bill of the Palmer company for want of equity.

From this decree the Palmer company prosecutes this appeal.

HIRAM T. GILBERT, for appellant.

GEORGE A. CHRITTON, for appellees.

MR. JUSTICE BAKER delivered the opinion of the court.

This dispute between the parties on their appeal is thus stated in the brief of counsel for appellant:

"That Palmer and Driver, in October, 1898, made an oral agreement with the complainants by the terms of which the complainants were to receive five per cent. on each payment made by the Goodrich company, as made, and an additional five per cent. of the

total payments when completed, and were to perform, without charge, all necessary professional services for the Palmer company in any litigation which might arise between that company and the Goodrich company growing out of the contract between them, is not disputed. The dispute between the parties is as to whether that oral agreement is binding upon the Palmer company''.

The first reason why that agreement is not binding on the Palmer company, stated in appellant's brief is that: ''The compensation agreed upon was exorbitant.'' There is no direct evidence in the record as to the usual rate of commissions charged and paid for negotiating transactions of the nature of the transaction between the Palmer company and the Goodrich company. Douglas Dyrenforth, one of the complainants, told Driver, at the outset, in answer to his question as to what would be a fair compensation, that he had found on inquiry that the commissions for that kind of work varied all the way from a half downwards; that 33⅓ per cent. was a very common commission. We do not think that in the absence of any evidence that a commission of ten per cent. was greater than the usual and customary commissions for such transactions, that the compensation agreed on by the parties can be held exorbitant.

Appellant next insists that: ''The settlement cannot be supported as being a compromise of a disputed claim'' and also that: ''The settlement cannot be supported as being based upon a consideration in addition to the services in respect to the sale to the Goodrich company''.

The contention of complainants was, that in April, 1898, the Palmer company agreed to pay complainants, in case Douglas Dyrenforth succeeded in effecting a sale of the property of the Palmer company, a commission of ten per cent.; in case he succeeded in effecting a license, a commission of five per cent.; that the transaction between the two corporations was in

effect a sale; that Douglas Dyrenforth had taken part in negotiating and effecting such sale; that complainants were entitled to receive ten per cent. of each payment when made to the Palmer company, and were under no obligation to render any services in case of litigation in relation to the transaction. Under the new agreement the time of payment of one-half of their compensation was postponed until the final payment should be made, and they agreed to perform, without charge, all necessary professional services for the Palmer company in any litigation that might arise between that company and the Goodrich company growing out of that contract. The complainants made a substantial concession from their claim, in favor of the Palmer company in agreeing to postpone the payment of one-half of their compensation, and incurred a new obligation by their agreement, in a certain contingency, to render to the Palmer company professional services without charge. We think that the making of such concession and the incurring of such new obligation constitute a sufficient consideration to support the new agreement made by the parties.

The next reason stated is that: "The settlement was not binding upon the Palmer company because the complainants misrepresented the legal effect of the contract between the Palmer company and the Goodrich company".

The misrepresentation alleged is that complainants represented to Palmer and Driver that the transaction between the two corporations constituted a sale. One question in dispute was, whether said transaction amounted to a sale or only a license. Appellant's counsel say that: "Instead of being a sale as that term is ordinarily understood, the transaction between the Palmer company and the Goodrich company was a contract by which the Palmer company agreed to transfer and convey its property to the Goodrich company and the latter agreed to accept the transfer and conveyance and, in consideration thereof, to pay to the

Palmer company $35,000 per annum in quarterly payments during a period of eleven years, and an additional $1,000 on January 10, 1910, if there should in the meantime be no decision of the United States Circuit Court of Appeals declaring patent No. 489,714 and re-issue No. 11,677 invalid.''

The instruments executed by the Palmer company in terms state that said company had sold, assigned, transferred and set over to the Goodrich company the patents and other property of said company. There is, it is true, in the contract between said corporations a provision that, in case a certain patent should be declared, "void or invalid", then the Goodrich company, "may refuse to make and be released from further payments", under said contract.

We do not think that the complainants misrepresented the nature of the transaction in stating that it amounted to a sale rather than a license.

Again it is clear that Palmer and Driver were not led or influenced to make the agreement by the statements of complainants that the transaction between the two corporations amounted to a sale. Philip C. Dyrenforth, one of the complainants, testified that at the meeting between complainants and Palmer and Driver at which the agreement was made, he stated his opinion that the transaction was in effect a contract of sale, and Palmer and Driver stated that it was a license, and further testified as follows: "I said to Mr. Driver and to Mr. Palmer: 'Gentlemen, I think I have a suggestion which may overcome all of this difficulty.' I said: 'The issue seems to be only whether this document, the contract with the B. F. Goodrich company, constitutes an out-and-out sale or merely a license.' I said: 'Now, that has been discussed between us and you have said what you have to say in the matter; we have said what we have to say in the matter', and I said, 'There is no desire apparently to submit this matter to a court for consideration.'

"Q. Had that been suggested? A. There had been some suggestion of that kind, and Mr. Driver was particularly opposed to anything of that kind. I said, 'Whether this is a sale or a license, due to the contingency, the event will prove.' I said, 'If the B. F. Goodrich Company continues, throughout the life of the patent, to pay The Palmer Pneumatic Tire Company what it has agreed to pay, or in any other event, The Palmer Pneumatic Tire Company gets from the B. F. Goodrich Company all that the contract calls for, it is perfectly obvious that it is a sale; it has that effect.' I said, 'I have therefore suggested to my brother, W. H., and he has acquiesced in it, that you pay from now on five per cent. instead of ten per cent. of the contract price, and if at the time of the expiration of the patent, the full purchase price has been paid, then you pay us, in a lump sum, the other five per cent.' Mr. Driver spoke up and he said: 'I think that is a very fair proposition.' He said: 'I am in favor of that; what do you say, Mr. Palmer?' And Mr. Palmer said that he thought that was satisfactory, too. That was the agreement that was entered into then and there."

William H. Dyrenforth testified substantially to the same effect, and their testimony was not contradicted. If it be assumed that the transaction between the two corporations was in effect a license and not a sale, still as Palmer and Driver were not led or influenced to make the new agreement by the statement of complainants that said transaction was a sale and not a license, the new agreement cannot be held invalid because of such statements.

The fourth reason stated in the brief of appellant, why the new agreement should be held invalid, is that: "The relation of attorneys and clients existing between the complainants and the Palmer company, Palmer and Driver, rendered it impossible for the complainants to enter into a contract with their clients unless such contract was equitable and just."

The finding of the decree is that the said compromise agreement between the complainants and the Palmer company was entered into by Palmer and Driver on behalf of said company: "freely and voluntarily with a full knowledge of all the facts, and the said complainants used no influence or duress of any kind whatsoever   *   *   *   , that the amount so agreed to be paid was reasonable, equitable and just under all the circumstances." Substantially the same conclusions are stated by the master in his report.

We think that the conclusion thus reached and stated by the master and the chancellor are just and proper on the evidence, and that conceding that the rule of law stated by appellant was applicable to the parties when, late in October, 1898, the compromise agreement was made, that agreement is valid and binding on the Palmer company.

The only other reason stated in the brief of appellant why said agreement was not binding on the Palmer company is that: "The court cannot permit the settlement to stand, in view of the letter of Douglas Dyrenforth of September 30, 1898." The letter referred to is as follows:

"Sept. 30, 1898.

JOHN F. PALMER, ESQ.,
    133 So. Clinton St., City.

DEAR SIR:—After a day and a night's consideration I have been unable to overcome the aversion of my partners to enter suit against a client. They fully agree with me, however, that your course in refusing to pay 10%, if adhered to, would evidence a shameless ingratitude. If you can enjoy your position you are welcome to it. For myself I need only to say that if you think it to your interest to sacrifice my good-will and friendship, both of which have been valuable to you in the past, so that you can increase your income 5%, why, make the most of it.

You ought to remember that the Astor House talk only settled that the original commission contract was in force and that I was not to be limited to a *per diem*.

You thought that as you had done that work of carrying out my plans I should not be further recognized in the matter. This I resented and you came down. Then I did all the rest of the work myself, as originally contemplated, and am hence entitled to the compensation originally agreed upon.

I have caused my expenses to New York to be itemized, and herewith enclose a memorandum of same, the difference between which amount and $425 drawn by me from Mr. Griffith, please deduct from the first payment due us.

In behalf of the B. F. Goodrich Company this office will send to you for execution certain documents; and as soon as our clerks can arrange your papers they will be sent to you for such disposition as may be proper.

Yours respectfully,

DOUGLAS DYRENFORTH.

P. S. The matter may be too delicate for you to appreciate, but I will say that a controlling reason why my firm objects to litigation with you is that to succeed we would have to make public confidential matters; and while their preservation is to your interest, we would rather sacrifice the money than alter our usual practice as professional men. D. D.''

The contention of appellant is that this letter contains, "a veiled threat", to reveal confidential matters, and that Palmer did not then know and was not informed until just before his company ceased to make payments under said agreement in 1905, that an attorney was not permitted to reveal confidential matters. We find in this letter no language that can properly be construed to amount to a threat to reveal confidential matters. As to this letter we concur in the conclusion stated by the master in his report, and by the chancellor in the decree: "that this letter of September 30, 1898, was not a threat to institute litigation against said defendant, but that, on the contrary, it was a distinct statement that nothing further would be done by the complainants with respect to any such litigation, and that said five per cent. would be ac-

cepted; that this letter was not, under all the circumstances, such a letter as was calculated to arouse apprehension on the part of said John F. Palmer and E. A. Driver, representing The Palmer Pneumatic Tire Company, of injurious results from refusing to accede to the demands of the complainants, and could not, and as a matter of fact did not, arouse any such apprehension on their part.''

Neither in the subsequent correspondence nor in the interview at the time the compromise agreement was made was there any suggestion that the letter contained a threat.

The negotiations that resulted in the compromise agreement were conducted on the part of the Palmer company by Palmer and Edward A. Driver. That in making said agreement Mr. Driver took the leading part appears from the testimony of Palmer as well as from that of Philip C. and William H. Dyrenforth. On his cross-examination Palmer was asked why the additional five per cent. which it was agreed that the Dyrenforths should have, was made conditional on the payments being made by the Goodrich company, and answered: ''On the principle of putting off the evil day as long as we could, I guess'', and further testified as follows:

''Q. Was it because of the suggestion of Mr. P. C. Dyrenforth that inasmuch as you thought this was merely a license and not a sale, that if all the payments were made you would be willing to concede that it was a sale and not a license? A. I never was willing to concede anything except the money.

Read the question. (Question read.) Q. You can answer that yes or no? A. In view of my condition of mind that is a very hard question to answer with a yes or no. I had surrendered to Mr. Driver when I went to the office of Dyrenforth & Dyrenforth.''

There is nothing in the record tending to show that Mr. Driver found in said letter any suggestion of a threat to reveal confidential matters. He died in 1904,

and it was not until after his death that the Palmer company refused to carry out said agreement. We think the compromise agreement cannot be held invalid because of said letter.

Appellant further contends that the compromise agreement was invalid under the Statute of Frauds, because it was not in writing and was not to be performed within one year. Conceding that the agreement is within the statute and that the letters of Palmer of November 18, 1898, and February 12, 1903, do not constitute a sufficient note or memorandum in writing of said agreement, there was, in our opinion, a sufficient part performance of said agreement by the Palmer company to take it out of the statute.

On the proofs the complainants, in our opinion, are entitled to the relief granted by the decree, and the decree will be affirmed.

*Affirmed.*